HIGGINS et al. v. HAMBURG–AMERICAN PACKET CO.

(Circuit Court of Appeals, Second Circuit. April 2, 1906.)

SHIPPING—LOSS OF CARGO—LIABILITY FOR NEGLIGENCE.

> Cargo was shipped at Baltimore on respondent's steamship Bulgaria to be carried to Hamburg. When the ship reached a point in the river Elbe some 14 miles below Hamburg, owing to the low water in the river she anchored and proceeded to discharge her cargo into lighters owned by respondent, as was customary and provided for in the bill of lading. The Patricia, another ship owned by respondent, was also anchored above the Bulgaria a sufficient distance away, so that the two vessels swung clear of each other with the changes of the tides. Early on the morning of the second day at the commencement of the flood tide when the Bulgaria swung up stream it was seen that she was likely to collide with the Patricia, and her engines were started ahead, and a lighter into which a part of the cargo had been discharged was cast off and drifting against the Patricia was injured and sunk. *Held*, under the evidence that the drifting together of the two ships was caused by the fact that at some time during the night the Patricia dragged her anchor and moved with the tide into dangerous proximity to the Bulgaria, and that the negligence of the officers of the ships in failing to discover such fact, and in not taking measures to avert the danger, rendered respondent liable for the cargo lost in the lighter.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the United States District Court for the Southern District of New York, holding the respondent liable for cargo damage. This suit was brought by a libel in personam filed by the underwriters of the owners of

said cargo, alleging that the loss was due to the negligence of respondent.

The following is the opinion of Holt, District Judge, in the court below:

In my opinion the Harter act has no application to this case. That act applies to a vessel transporting merchandise or property to or from any port in the United States. The Patricia was simply lying at anchor and was not making any voyage. The Alster was transporting property which had come from the United States, but she was not transporting the property from any port of the United States. She was simply transporting it from the Bulgaria up the river to Hamburg. The Bulgaria had ended her voyage, and had delivered the merchandise, the injury to which has given rise to the controversy in this suit. By the terms of the bill of lading the steamer's responsibility ceased immediately the goods were discharged from the steamer's deck. I think, therefore, that the transportation of these goods from a port of the United States to a foreign port, in the sense of the language used in the Harter act, had been completed, and that whatever took place after the delivery of the goods to the lighter is not to be governed by the provisions of the Harter act, but is to be governed by the law and rules applicable to vessels swinging at anchor in a harbor.

There are only two possible explanations of this collision; either the Bulgaria anchored originally too near the Patricia or one or the other of these vessels dragged her anchor. If the Bulgaria originally anchored too near the Patricia, I think that the officers of both steamships were negligent in not discovering that fact during the two days which elapsed after the Bulgaria came to anchor and before the collision. But the witnesses from both steamers are positive that the Bulgaria was originally anchored at a safe distance from the Patricia, and their only explanation of the accident is that the anchor of one of the steamers must have dragged. If, as the respondent claims, the anchor of the Bulgaria dragged, so as to bring her nearer to the Patricia, it could only have occurred the day before, for the tide was ebb substantially all the night before the collision. The tide turned about 9 o'clock in the evening, and was ebb until about 4 o'clock in the morning, when it turned and caused the collision. But the evidence established that at that time of the year, at that place, it continued daylight until about 9 o'clock at night, and if the Bulgaria dragged her anchor in the daytime, so as to bring her within reach of the Patricia, I have no doubt that the officers of both steamers were negligent in not noticing it and anchoring further apart. But I think that the evidence preponderates that it was the Patricia that dragged her anchor in the night. The officers all testify that there had been no change in the situation of the two steamers on the day before the accident. If the Bulgaria had dragged her anchor that night, it would have taken her further away from the Patricia than she was before. If either vessel dragged that night, it must have been the Patricia, and I think that the evidence preponderates that that was what took place, and that that was the cause of the collision.

The important question in the case, therefore, in my opinion, is whether the dragging of the Patricia's anchor in the night was an excepted sea peril, for the result of which her owners are not responsible. The sudden dragging of an anchor and any consequent injury to a vessel, which is not preventable by ordinary care and skill, is an excepted sea peril, but in this case, assuming that the Patricia dragged her anchor that night, there was no danger of a collision until the tide turned, and it seems to me that the lookouts on both steamers were negligent in not discovering that the two vessels had come nearer together before the tide turned. The danger of the two steamers drawing too near each other was an obvious danger, which the officers of each vessel were bound to look out for constantly and vigilantly. Although it was at night and the change of position not as obvious as if it had occurred in the day time, the steamers' anchor lights must have been in place, and I think that the officers on watch were negligent in not discovering that the steamers had drawn too near together. When the collision occurred it was about dawn; the weather

was clear, and although there would be less likelihood of a small change of situation being noticeable in the dark, I think that when two such steamers had drifted near enough to each other to be in risk of collision, their officers were negligent in not discovering the fact either in the night or the day. If they had discovered it at any time before the tide actually turned the danger could have been averted. There were several tugs present which could have moved the Patricia back or moved the Alster away, or the Bulgaria could have gone further down the river under her own steam. Her officers claim that in swinging she stuck on the mud forward, but I do not understand that there is any claim that she was aground before she began to swing with the tide. In short, in my opinion, whatever view may be adopted as to the manner in which the Patricia and the Bulgaria got too near together, the respondent's agents on some of these vessels were negligent in not discovering that they had done so before the tide turned and in not taking efficient steps to prevent the collision before it occurred.

The clause in the bill of lading providing that the carrier shall not be liable for damage capable of being covered by insurance in my opinion constitutes no defense in this case. Such a clause is no protection against a claim by the owner of the cargo for damage caused by the respondent's negligence (The Titania [D. C.] 19 Fed. 101, 104; The Egypt [D. C.] 25 Fed. 320, 329); and the libelants in this case are subrogated to the rights of the owner of the part of the cargo referred to in this libel. The lighterage clauses in the bill of lading, providing in substance that the Bulgaria should not be responsible for forwarding the cargo in lighters up the Elbe to Hamburg, also, in my opinion, have no application to this case. If the owner of the Bulgaria had not been also the owner of the Alster, and the Alster had left the Bulgaria with the property which was injured on board, and was proceeding to Hamburg, the Bulgaria, under these clauses, would probably not be liable for any injury to the cargo from the negligence of the Alster; but as in this case all three of the vessels were owned by the respondent, and this suit is a suit in personam, and the ground of liability is the negligence of some of the respondent's agents, I do not see that the lighterage clauses in the bill of lading have any application to the case.

My conclusion is that there should be a decree for the libelants, the form of which should be settled upon notice.

Everett P. Wheeler, for appellant.
· Charles C. Burlingham, for appellees.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. In the view we have taken of the case the defenses based on the claims of exemption from liability by reason of the Harter act and of certain provisions in the bill of lading need not be discussed. The cargo was shipped at Baltimore on respondent's steamship Bulgaria to be forwarded to Hamburg. When the steamship reached a point in the River Elbe opposite Brunshausen, and some 14 miles below Hamburg, the water in the river was low, and under a provision of the bill of lading, and in accordance with the usual procedure in such conditions, the Bulgaria, on the afternoon of May 27, 1902, anchored at the customary place, and some 300 or 400 yards from a point where the steamship Patricia, also belonging to the respondent, was anchored, and proceeded to discharge a portion of her cargo into lighters belonging to the respondent. One of the lighters was made fast on the port side of the Bulgaria near her stem, and the portion of the cargo for which damage is claimed herein had been discharged into this lighter. During the 27th and

28th, with lighters alongside, the steamers had swung clear of each other with the turning of the various tides. At about 4 o'clock on the morning of May 29th, just as the tide was commencing to flood, the Bulgaria began to swing and drift broadside up the river toward the Patricia, and, while so swinging, it is claimed that she stuck in the mud forward. In any event, her stern continued to swing, and her officers saw that she was likely to collide with the Patricia, and started her engines ahead, and ordered the lighter cast off, in order to prevent it from being crushed between the two steamships. The lighter went adrift, caught on a safety hook of the rudder of the Patricia, sprung a leak, broke the hook, and sank before it could be towed ashore.

The evidence indicates that one of the steamships had dragged her anchor during the preceding night. The court below held that the preponderance of evidence showed it was the Patricia which dragged her anchor, and that this was the cause of the collision.

The testimony of the officers of the Patricia that she did not drag her anchor is indefinite and inconclusive. Her chief officer was asleep at the time of the accident and, therefore, could not testify as to the position of his vessel at that time. His second officer testified that he took the bearings of the Patricia the night before the accident, and they were the same as when they first anchored, and that when he came on deck just before the collision the ships were the same distance from each other as on the previous night, "as far as I can say," or "as far as I could see," but he admitted, "I didn't notice: I didn't take bearings."

The log of the Bulgaria and the testimony of the Bulgaria's officers are to the effect that it is "very likely" that one of the ships dragged her anchor the night before; that it was much more likely it was the Patricia than the Bulgaria; that if the Bulgaria had dragged during the night, she would have drifted down and away from the Patricia, and her officers would have noticed it; that they did not notice any such dragging, and did not believe the Bulgaria dragged.

In the face of this testimony, counsel for respondent argues that either the Bulgaria dragged her anchor on the flood tide on the morning of the accident, or that the Bulgaria swung with the flood tide, while the Patricia remained stationary. The unsoundness of the first contention appears from the fact that while the Bulgaria was swinging around with the flood tide there would be no strain on her anchor; the second contention is a mere conjecture, and is not supported by any testimony, except "a guess" on the part of one witness, who ascribes the cause of the accident to the dragging of one of the anchors, and the statement of the second officer of the Patricia, who said that when the Bulgaria was swinging "she took away the current from the Patricia." The fact that all the witnesses on the part of the respondent concur in ascribing the collision to other causes, and that no such blanketing or swinging had occurred on any of the previous tides, is a sufficient answer to this second contention.

The foregoing considerations establish the correctness of the find-

ings and conclusion of the court below, for the reasons stated in its opinion, that the dragging of the Patricia's anchor was the cause of the collision, and that the respondent was liable for negligence, in failing to discover the fact that the two vessels had drawn so near together that there was risk of collision, and in not taking measures to avert the danger.

The decree is affirmed, with interest and costs.